UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DA'VONCIA WILLIE BEASLEY,<br><br>Plaintiff,<br><br>v.<br><br>CENTURION HEALTH CARE DEPARTMENT OF W.V.C.F.,<br>DR. BYRD,<br>DR. RILEY,<br>C. JONES,<br>INDIANA DEPARTMENT OF CORRECTIONS,<br><br>Defendants. | ) | No. 2:26-cv-00354-JRO-MG |

**ORDER SCREENING COMPLAINT AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Da'Voncia Willie Beasley is a prisoner currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He filed this civil action under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), alleging that the defendants refused to provide him reasonable accommodations for his disability. Because the plaintiff is a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. SCREENING STANDARD**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same

standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE COMPLAINT

Beasley's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). The complaint names as defendants Centurion Health Care Department ("Centurion"), Dr. Byrd, Dr. Riley, ADA Coordinator C. Jones, and the Indiana Department of Corrections ("IDOC"). Beasley sues the defendants in their individual and official capacities.

Beasley alleges that on July 27, 2025, ADA Coordinator Jones received his request for accommodations for his clubfeet. Beasley requested appointments with a podiatrist or orthopedist, custom orthotic shoes, a walking cane, and pain medication. On August 6, 2025, he saw Dr. Byrd about his condition. He says Dr. Byrd put in an order for Beasley's requested accommodations but did not properly evaluate his condition or take pictures of Beasley's feet. Beasley alleges

that because of Dr. Byrd's inadequate evaluation, his request for accommodations was denied. He says that Dr. Byrd's failure to photograph his disability "was the main reason that led to the denial and delay" of his accommodations. Dkt. 1 at 5. Beasley saw Dr. Byrd again on October 17, 2025, and explained his disability. He says Dr. Byrd took pictures this time and remarked that he had "never seen a disability like" Beasley's. *Id.* Beasley asserts that if Dr. Byrd had taken the pictures and properly evaluated him in August 2025, his accommodations would not have been denied.

Beasley alleges that Dr. Riley denied his request for accommodations for his clubfeet "for no logical reason" and without conducting a thorough evaluation of his condition. *Id.* at 6. Beasley says that after Dr. Byrd took pictures of his feet on October 17, 2025, he resubmitted Beasley's "order for 'OPR Hanger Clinic.'" *Id.* He alleges that on December 9, 2025, he was escorted to the Hanger Clinic where he would be fitted for special orthotic shoes. Beasley says he received a recommendation for special shoes, but it was up to prison officials to order them for him. Beasley returned to the Clinic on February 24, 2026, believing his shoes were ready. Instead, he was told that Dr. Riley had denied his request for shoes and had instead approved shoe inserts. But because Beasley had "the wrong shoes to support [his] disability," the inserts did not help. *Id.* He alleges that he continues to suffer daily pain without the proper shoes.

Beasley also alleges that ADA Coordinator Jones "disregarded and neglected" his request and need for accommodations. *Id.* at 7. Beasley asserts that "Jones is the one to blame" for Dr. Riley denying him shoes from the Hangar

Clinic "because she neglected [his] request for accommodations." *Id.* He says Jones never evaluated him to determine the severity of his disability, in violation of IDOC policy. Beasley asserts that because Jones violated her duties as ADA Coordinator, he did not receive the shoes he needs to accommodate his disability.

Beasley alleges that Centurion has "an unwritten policy or practice of denying [him] and inmates serious medical treatment." *Id.* at 8. He says that he has been seeking treatment of his disability since at least July 2025, and he has yet to receive proper medical care. He asserts that "medical staff" have disregarded his medical needs, although he was prescribed Nortriptyline in August 2025. He says this medication was not effective, and he "reached out to medical staff to let them know." *Id.* Beasley alleges that Dr. Byrd recommended a higher dosage of this medication, but that also did not help. When Beasley requested a different medication, "medical staff simply cut off [his] order" and left him without any pain medication "for several days." *Id.* He filed complaints about this and received a new medication called Divalproex, to which he "had a bad reaction" and which caused him to black out. *Id.* Beasley alleges that this was anti-seizure medication, but he has never had seizures.

Beasley alleges that sometime in early 2025, he fell down the stairs because of his disability and broke his foot. He alleges that "nothing was done to help [him] cope with all the pain." *Id.* He says "medical staff" ordered an x-ray of his foot and gave him a medical boot, but he was never taken for surgery or provided a bottom bunk. Beasley alleges that he again fell down the stairs in December 2025 and twisted his ankle. He says that "medical staff" again did

nothing to help him besides ordering an x-ray. He remained on an upper floor and had to take the stairs daily. Beasley alleges that the defendants knew about his disability and should have provided him a cell on a lower floor to avoid the risk that he could fall while traversing the stairs. Beasley also seeks to sue the IDOC based on the lack of accommodations for his disability.

Beasley claims that the defendants' actions or inaction violated his rights under the Eighth Amendment, the RA, and the ADA. He seeks $500,000 in compensatory and punitive damages.

**III. DISCUSSION OF CLAIMS**

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

"Prison officials' deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. To state a valid Eighth Amendment claim, a plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Beasley does not state an Eighth Amendment claim against Dr. Byrd. Beasley alleges that Dr. Byrd did not conduct a proper evaluation in August 2025, and his request for accommodations was denied. But he says that Dr. Byrd then conducted a proper evaluation in October 2025—including taking pictures of his disability, the absence of which he believes was "the main reason" for the initial denial of his request. Even after Dr. Byrd submitted these photographs, Beasley's request was denied. Beasley alleges that even Dr. Byrd was confused with this outcome and said he had never seen such a disability. Beasley also alleges that, in the meantime, Dr. Byrd prescribed him pain medication and increased the dosage when Beasley complained that it was not effective. These allegations show that Dr. Byrd took various actions and made several efforts to address Beasley's medical issues. Even if these measures did not alleviate Beasley's pain, that does not mean Dr. Byrd was deliberately indifferent to it. *See Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (citing *Farmer*, 511 U.S. at 844) ("Evidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference."). Accordingly, all claims against Dr. Byrd **are dismissed**.

Beasley, however, **may proceed** on an Eighth Amendment claim of deliberate indifference against Dr. Riley and ADA Coordinator Jones related to the denial of reasonable accommodations for his disability.

Beasley also **may proceed** on a claim under the RA related to his allegations that he has been denied reasonable accommodations for his

disability. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (citing *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006), and *Alexander v. Choate*, 469 U.S. 287, 300–01 (1985)). The Court will not also allow him to proceed in a claim under the ADA because the relief afforded under both acts is coextensive, and Beasley may not recover under both. *See id.* at 671–72. This claim will proceed against the IDOC, which is the proper defendant in claims under the RA. *Id.* at 670.

Beasley also seeks to proceed on a claim against Dr. Riley in her official capacity. Claims against an official in his official capacity represent another way to plead an action against the entity that he represents or for which the official works. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Although Beasley does not expressly name Dr. Riley's employer, the Court can presume that it is Centurion, which has contracted with the IDOC to provide medical treatment to prisoners.

But Centurion "cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Centurion, as a private corporation, may not be held liable for the actions of its employees under a theory of *respondeat superior*. *Id.* (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Instead, the plaintiff must allege "that his injury was caused by a [corporation] policy,

custom, or practice of deliberate indifference." *Shields*, 746 F.3d at 796 (citing *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)).

Beasley does not state a claim against Centurion. He alleges that Centurion has "an unwritten policy or practice" of denying him medical treatment. But he alleges no facts to support that conclusion, which the Court need not accept as true. *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 554–56. His allegations instead show that he has received medical care for his disability, just not the level of care he wants. Beasley seemingly tries to prove a policy by alleging that "medical staff" have denied him proper medication or prescribed incorrect medication to treat his pain. But he does not explain how these individuals' actions suggest a Centurion policy, practice, or custom of providing inadequate care rather than isolated instances of substandard treatment. And Beasley cannot proceed against the unnamed medical staff members because the "staff" of a prison department is not a proper defendant under § 1983. *Cash v. Marion County Jail*, 211 F. App'x 486, 488 (7th Cir. 2006); *see also Gray v. Weber*, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of prisoner's § 1983 complaint alleging denial of medical care against defendants identified "only collectively as 'medical staff'"). Accordingly, all claims against Dr. Riley in her official capacity and against Centurion **are dismissed**.

Beasley also seeks to bring a claim against ADA Jones in his official capacity. Because Jones is an employee of Wabash, the Court construes this claim as if brought against the State of Indiana. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Graham*, 473 U.S. at 165–66; *Monell*, 436 U.S. at

690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* As such, Beasley may not recover monetary damages against Jones in his official capacity in this suit. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). Accordingly, any claims against Jones in her official capacity **are dismissed**.

Nor may Beasley proceed on a claim alleging that Jones violated prison or IDOC policy or regulations when she denied Beasley's request for accommodations. Section 1983 protects against only constitutional violations; it does not protect against violations of prison regulations or policies. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

Beasley also seeks to proceed on a separate claim related to his falls in early 2025 and December 2025. He does not say that any named defendant was involved in these falls and says only that unnamed "medical staff" failed to provide proper treatment for his injuries. This claim is not properly joined with Beasley's claims about his denied accommodations. The Seventh Circuit has explained that "'[u]nrelated claims against different defendants belong in different suits.'" *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)); *see* Fed. R. Civ. P. 18(a) and 20(a)(2). Because Beasley's claim about his falls and resulting injuries is unrelated to his claims about his disability accommodations and because the

two claims involve different defendants, any claims based on these incidents are **dismissed without prejudice**.

Accordingly, Beasley may proceed on the following claims: 1) Eighth Amendment claim of deliberate indifference against Dr. Riley and ADA Coordinator Jones in their individual capacities; and 2) a claim under the RA against the IDOC.

This summary includes all viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes additional claims were alleged in the complaint but not identified by the Court, he shall have **through November 23, 2026,** in which to file a motion to reconsider the screening order.

## IV. CONCLUSION AND SERVICE OF PROCESS

The following claims are proceeding in this action: 1) Eighth Amendment claims of deliberate indifference against Dr. Riley and ADA Coordinator Jones; and 2) a Rehabilitation Act claim the against the IDOC.

The **clerk is directed** to terminate Centurion Health Care Department and Dr. Byrd as defendants on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Dr. Riley, C. Jones, and the Indiana Department of Correction in the manner specified by Rule 4(d). Process shall consist of the complaint filed on May 18, 2026, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction and Centurion employees electronically.

A copy of this Order and the process documents shall also be served on Centurion electronically. Centurion is **ORDERED** to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information shall be filed ex parte.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED**.

Date: 10/23/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

DA'VONCIA WILLIE BEASLEY
275343
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Electronic service to IDOC and employee
ADA Coordinator C. Jones (at Wabash Valley Correctional Facility)

Electronic service to Centurion
Dr. Riley